**Stephan SCHMIDHEINY**

v.

**Steven WEBER d/b/a/ Domainsale and Famology, Inc. and Famology.Com, Inc.**

No. C.A. 01–377.

United States District Court, E.D. Pennsylvania.

May 18, 2001.

mence further litigation in this court may subject him to sanctions.

Arthur Newbold, Michael S. Doluisio, Dechert, Price & Rhoads, Philadelphia, PA, Neil E. McDonnell, Lauren J. Mandell, Dorsey & Whitley, LLP, New York City, Marc S. Reiner, Dorsey & Whitney LLP, New York City, for Stephan Schmidheiny.

Anthony J. De Gidio, Calamunci Groth Joelson & Manore, Toledo, OH, for Steven Weber, Famology.Com, Inc. and Domainsale.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Stephan Schmidheiny, brought this action against Steven Weber and various entities controlled by Weber (collectively "Weber"), under the Anti-cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1129. Presently before the court is the defendants motion to

dismiss the complaint. For the reasons which follow, the motion is denied.

We accept as true all the allegations of the amended complaint. Schmidheiny is an international industrialist, author and environmentalist. He is a Swiss national. Weber is a resident of Pennsylvania whose business includes the registering of internet domain names for later sale to others for profit. The other defendants are alleged to be alter egos of Weber. On or about November 15, 2000, Schmidheiny received an e-mail from Weber in which the defendant offered to sell the domain name "schmidheiny.com" to plaintiff for financial gain. Weber had registered the domain name on or about June 22, 2000. The domain name consists of Schmidheiny's personal name. Plaintiff never consented to the domain name registration.

15 U.S.C. § 1129(1)(A) provides

Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

Section 1129(2) provides further

In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. The court may also, in its discretion, award costs and attorneys fees to the prevailing party.

The Act is effective for any domain name registered after November 29, 1999. 15 U.S.C. § 1129(4).

■ In his motion to dismiss, Weber first argue that Schmidheiny lacks standing to bring his claim because he is a Swiss national and Congress never intended for the ACPA to extend to foreign nationals with no ties to the United States. We find this contention has no merit.

Standing generally refers to one aspect of the jurisdictional boundaries of the federal courts. Article III standing focuses primarily on the parties seeking adjudication. By examining "whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy" *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), federal courts use standing to limit their jurisdiction in accordance with the statement in Article III that only cases or controversies are to be adjudicated and its corollary rule prohibiting advisory opinions.

■ Federal courts use a two part inquiry to resolve standing questions. First, a plaintiff must assert a "personal stake" in the outcome of the controversy, one which demonstrates that the plaintiff has suffered an "injury in fact." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Second, a plaintiff must show that his injury is causally linked to the putatively illegal conduct of the defendant. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The United States Supreme Court has characterized these two factors as the irreducible minimum required by Article III. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The injury in fact component of the Court's standing doctrine serves a separation of powers concern central to the "case or controversy" language of Article III by limiting judicial power to those disputes "thought capable of resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 20

L.Ed.2d 947 (1968). It serves "as at least a rough attempt to put the (dispute) in the hands of those who have a direct stake in the outcome," *Sierra Club,* 405 U.S. at 740, 92 S.Ct. 1361 and provide the courts with "that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for the illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ Beyond the minimum requirements mandated by Article III, the Supreme Court has erected "prudential" barriers to a plaintiff's standing. These limitations come from a perceived institutional need for judicial self-restraint, rather than from the constitution itself. Accordingly, the Court has held that a party must generally assert his or her own legal rights, not those of third parties, *see e.g. Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197 and that the claim asserted must be within the "zone of interests, protected by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

We find that the complaint adequately alleges that the plaintiff has suffered an injury in fact within the zone of interests protected by the statute. Indeed, the complaint states the archetypical injury the statute seeks to prevent—the misappropriation for profit of a person's name as a domain name. As Schmidheiny has alleged a concrete injury in fact, we can not see how his status as a foreign national could alter this analysis. As plaintiff correctly asserts, "[f]or purposes of Article III standing, [plaintiff]'s status as a nonresident alien does not obviate the existence of [his] injury; it is the injury and not the party that determines Article III standing." *Cardenas v. Smith,* 733 F.2d 909, 913 (D.C.Cir.1984), *citing Warth.*

Further, to the extent it is argued that Schmidheiny's injury occurred in Switzerland, a proposition we do not find to be supported by the allegations of the complaint, "[a]n injury endured abroad is not less of an injury for Article III standing purposes because it happened on foreign soil. *Cardenas,* 733 F.2d at 913".

■ We also find no extraterritoriality impediment to Schmidheiny's complaint. The action alleges that Weber violated the ACPA by activities that occurred within the United States. Amended Complaint ¶8 ("Upon information and belief, this Court has personal jurisdiction over the defendant Weber because he resides in Pennsylvania and has committed tortuous acts and injury as described herein in the State of Pennsylvania."). Exhibit 1 to the Amended Complaint indicates that the domain name was registered to defendant Famology.com in Toledo, Ohio. The address for Weber, who is listed as the "Admin Name" and "Tech Name," is a post office box in Harleysville, Pennsylvania. As we read the amended complaint, the only act that occurred outside the United States was the receipt by the plaintiff of Weber's e-mail, which was sent from the United States. Amended Complaint ¶22. This alone does not extend the reach of the statute beyond our shores.

To further support his argument that foreign nationals lacks standing, Weber points to the fact that the ACPA is codified within the Lanham Act, which only applies to United States trademarks. Weber's assertion, that it is thus highly unlikely that Congress intended the section apply beyond the traditional reach of the Lanham Act, i.e. the use of registered marks in domestic commerce, is fallacious. The Historical and Statutory Notes following § 1129 state that the

Section was added as part of the Anticybersquatting Consumer Protection Act,

*and not as part of the Trademark Act of 1946, also known as the Lanham Act,* which comprises this chapter.

(Emphasis added.) Moreover, while the Lanham Act's recent cyberpiracy prevention amendment protects, inter alia, a "personal name which is protected as a mark," 15 U.S.C. § 1125(d)(1)(A), the protection granted by ACPA is far more broad. It reaches any name of "another living person," irrespective of whether that name has become a protectable mark.

Next, Weber asserts that the government's professed "hands off" policy toward the Internet, the Clinton Administration's assignment to ICANN [1] of control over the registration of domain names, and the absence of any ICANN rule regulating the use of personal names, indicates that "[t]o the extent that Congress wishes to interfere with this delegated authority and legislate within the same area, one would assume their [sic] intent is to do so in a limited fashion." Defendants' Motion at 5. First, Weber points to nothing to indicate that Congress delegated any legislative authority to ICANN to control cybersquatting. Second, Weber's assertion that there has been an administrative delegation of Congress' law making authority to ICANN both raises a factual issue beyond the pleadings and is wholly unsupported by any showing that such a delegation could be proper. Third, no intent to limit the reach of the ACPA or be deferential to ICANN is evident from the words used by Congress. The statutory language is broad and unambiguous and there is no need to resort to methods of statutory construction to understand their import. The misappropriation of another living person's name as a domain name will subject the registrar to civil liability if his motive for filing the registration was to profit by selling the name. Fourth, it is equally arguable that the lack of any ICANN rule regulating the use of personal names indicates that Congress perceived the need to legislate against a wrong that was not being addressed, rather than an intent to defer to ICANN.

Weber next argues the complaint must be dismissed because he registered the domain name prior to November 29, 1999, the effective date of the Act. He points our attention to Exhibit 1 to plaintiff's complaint, the "WHOIS" information for the domain name, which shows a "creation date" for the domain name of February 28, 1999. That document, however, also shows a "registration date" of June 22, 2000. While Weber asserts that the "creation date" was the date he registered the domain name, and the "registration date" was the date he renewed the registration, this assertion is contrary to the allegations pled by the complaint, which we must accept as true. Weber is free to reraise this issue at the close of discovery in a motion for summary judgment.

Next, Weber asserts the plaintiff has not alleged any facts indicating he had the specific intent required by the statute to profit by selling the domain name. Paragraph 27 of the complaint, however, specifically alleges just such an intent on the defendants' part.

■ Next, Weber argues that any claims against him personally must be dismissed as he was not the registrant of the

---

1. ICANN, the Internet Corporation for Assigned Names and Numbers, is the non-profit corporation that was formed to assume responsibility for the internet protocol address space allocation, protocol parameter assignment, domain name system, and root server management functions previously performed under U.S. government contract by Internet Assigned Numbers Authority and other entities. See www.icann.org/general/abouticann.htm.

domain name. Exhibit 1 to the complaint lists Famology.com, Inc. as the "Organization Name" on the registration and Steven Weber as the "Admin Name." The complaint alleges that Famology.com. Inc. is the alter ego and instrumentality of Weber. Thus on the face of the pleadings, Weber qualifies as a person subject to liability for violation of § 1129(1)(A).

█ Finally, defendant Famology.com, Inc. asserts it must be dismissed because venue in this district is improper as to it. As Famology is alleged to be Weber's alter ego, and Weber's alleged actions culminating in this suit occurred in this District, we find that venue as to Famology is appropriately alleged in the complaint.